**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

| | | |
|---|---|---|
| **JENNIFER L. TILLEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:07-00241** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**M E M O R A N D U M   O P I N I O N**

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. This case is presently pending before the Court on the parties' cross-Motions for Judgment on the Pleadings (Document Nos. 12 and 16.). Both parties have consented in writing to a decision by the United States Magistrate Judge. (Document Nos. 3 and 4.)

The Plaintiff, Jennifer L. Tilley (hereinafter referred to as "Claimant"), filed applications for DIB and SSI on August 17, 2004 (protective filing date), alleging disability as of December 18, 2003, due to nerves, depression, anxiety, ulcers, diabetes, and foot pain.[1] (Tr. at 16, 54-56, 59, 62, 285, 286-88.) The claim was denied initially and upon reconsideration. (Tr. at 28-30, 37-39, 290-92, 297-99.) On August 31, 2005, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 40.) The hearing was held on March 14, 2006, before the Honorable Lawrence E. Shearer. (Tr. at 332-65.) By decision dated May 24, 2006, the ALJ found that Claimant was not entitled to benefits.

---

[1] On her application for reconsideration, Claimant alleged the additional disabling impairments of migraines and stomach problems. (Tr. at 37, 111, 297.)

(Tr. at 16-24.) The ALJ's decision became the final decision of the Commissioner on February 16, 2007, when the Appeals Council denied Claimant's request for review. (Tr. at 6-9.) On April 17, 2007, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's

2

remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2004). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of

the Listings of Impairments.

   (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[2] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental

---

   [2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

4

impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 18, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from degenerative disc disease in the feet, probable diabetic neuropathy in the feet, and mild to moderate affective disorder, which were severe impairments. (Tr. at 19, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 19, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity for a limited range of work at the light level of exertion as follows:

> The claimant can lift or carry 10 pounds frequently, 20 pounds occasionally, can sit, stand, or walk about 6 hours each in an 8 hour day, and can perform unlimited pushing or pulling with the extremities. The claimant can perform occasional climbing, balancing, stooping, kneeling, crouching, and crawling. The claimant should avoid concentrated exposure to vibration and hazards such as machinery and heights, and has no other environmental limitations. The claimant has no manipulative, communicative, or visual limitations. The claimant can perform simple and complex tasks in a normal work environment with or without supervision.

5

(Tr. at 22, Finding No. 5.) At step four, the ALJ found that Claimant was capable of returning to her past relevant work as a waitress and telephone solicitor. (Tr. at 23, Finding No. 6.) On this basis, benefits were denied. (Tr. at 24, Finding No. 7.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on July 16, 1958, and was 47 years old at the time of the administrative hearing, March 14, 2006. (Tr. at 54, .) Claimant had a high school education. (Tr. at 68, .) In the past, she worked as a cashier, janitor, office manager, telemarketer, and waitress. (Tr. at 63-64, 78-84.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant first alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in assessing the functional limitations imposed by her mental impairments. (Document No. 13 at 4-8.) Specifically, Claimant contends that the ALJ failed to consider Claimant's two hospitalizations in the 1990's, failed to mention Ms. Jarrell's report of her psychological evaluation, and erred in discounting the opinion of her treating physician, Dr. Riaz. (Id.) Consequently, Claimant alleges that the ALJ assessed no mental health limitations in his residual functional capacity ("RFC") analysis. (Id.)

The Commissioner asserts that the ALJ properly assessed Claimant's mental impairments. (Document No. 16 at 10-14.) Contrary to Claimant's allegation, the Commissioner points out that her symptoms were not consistent. (Id. at 10.) For instance, Claimant reported to psychologists Mari Sullivan Walker and Kevin Adams, that she had no suicidal ideation, auditory or visual hallucinations, or illusions. (Id.) However, when Dr. Rago evaluated her, Claimant reported suicidal thoughts as well as auditory and visual hallucinations. (Id. at 11.) The Commissioner asserts that the ALJ properly discounted the opinion of Dr. Riaz. (Id. at 11-12.) The Commissioner therefore, asserts that Claimant's arguments are without merit and that substantial evidence supports the ALJ's decision. (Document No. 16 at 9-14, 16.)

Second, Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in assessing her credibility. (Document No. 13 at 8-11.) Specifically, Claimant contends that the ALJ failed to acknowledge Claimant's significant mental complaints and

provided no substantive discussion of her credibility. (Id.) The Commissioner asserts that the ALJ properly determined that Claimant's testimony was exaggerated, and therefore, that she was not entirely credible. (Document No. 16 at 14-16.)

Finally, Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ improperly rejected the opinions of her treating physician, Dr. Riaz. (Document No. 13 at 12-14.) The Commissioner asserts that the ALJ properly discounted the opinions of Dr. Riaz. (Document No. 16 at 11-12.) The Commissioner notes that at the administrative hearing, the ALJ advised counsel that he did not place significant value on Dr. Riaz's report regarding Claimant's mental abilities because there was no evidence that Dr. Riaz understood what was required to meet competitive standards. (Id. at 11.) The ALJ further advised that Dr. Riaz's report was inconsistent with his treatment notes, which reflected a GAF of 60 and essentially normal symptoms. (Id.) The Commissioner points out that Claimant's counsel did not disagree with the ALJ but noted his concerns that the state agency's physician's opinion went to the other extreme. (Id.)

1. Functional Limitations from Mental Impairments.

Claimant first alleges that the ALJ erred in assessing the functional limitations imposed by her mental impairments. (Document No. 13 at 4-8.) The Commissioner asserts that Claimant's argument is without merit and that substantial evidence supports the ALJ's decision. (Document No. 16 at 10-14.)

At steps four and five of the sequential analysis, the ALJ must determine the claimant's residual functional capacity (RFC) for substantial gainful activity. "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Looking at all the relevant evidence, the ALJ must consider the

claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a); 416.945(a) (2006). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

The RFC determination is an issue reserved to the Commissioner. See 20 C.F.R. §§ 404.1527(e)(2); 416.927(e)(2)(2006).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

Although medical source opinions are considered in evaluating an individual's residual functional capacity, the final responsibility for determining a claimant's RFC is reserved to the Commissioner. See 20 C.F.R. § 404.1527(e)(2) (2006). In determining disability, the ALJ must consider the medical source opinions "together with the rest of the relevant evidence we receive." Id. § 404.1527(b).

As stated above, the ALJ determined that Claimant had the RFC to perform a limited range of light work with postural and environment limitations, consisting of simple and complex tasks in a normal working environment with or without supervision. (Tr. at 22.) Contrary to Claimant's

allegation, the ALJ determined that Claimant's depressive and anxiety disorders were severe impairments when he found that Claimant's mild to moderate affective disorder was a severe impairment. (Tr. at 19.) In finding these impairments severe, the ALJ noted Dr. Rago's assessment of signs and symptoms of a depressive and anxiety disorder. (Id.)

In his decision, the ALJ summarized the medical evidence of record. (Tr. at 19-22.) The medical evidence reveals that on October 13, 2004, psychologists Mari Sullivan Walker and Kevin Adams, conducted a psychological evaluation of Claimant. (Tr. at 21, 143-47.) Claimant reported that her nerves were shot, that she broke out in hives most every day, cried at the drop of a hat, and felt worthless. (Tr. at 143-44.) The psychologists noted that Claimant was hospitalized in 1990 for twenty-one days for suicidal ideation and in 1995 for five days for depression. (Tr. at 144.) At the time of the evaluation, Claimant was not receiving any psychological or psychiatric treatment due to the loss of her medical coverage. (Id.) On mental status exam, the psychologists noted that Claimant presented with a depressed mood and appeared tearful during the evaluation; a flat affect; normal stream of thought and thought content; normal insight, memory, concentration, and persistence; mildly retarded psychomotor behavior as demonstrated by her hand wringing; mildly deficient judgment; and mildly slow pace. (Tr. at 19, 146.) Claimant reported that she spent most of her days indoors, did some household chores such as dishes and laundry, and watched television. (Tr. at 19, 146.) Claimant further reported that she occasionally visited friends, relatives, and a neighbor, and attended church three times each week. (Id.) Based on Claimant's depressed mood, flat affect, loss of interest in pleasurable activities, indecisiveness, crying spells, and feelings of worthlessness, she was diagnosed with major depressive disorder, recurrent, moderate. (Tr. at 19, 147.) Based on her nervousness, worry, and scratching of her body, she was diagnosed with anxiety disorder, not

otherwise specified. (Id.) The psychologists noted that Claimant's prognosis was poor. (Tr. at 147.)

On March 19, 2005, a state agency medical consultant, Dr. James T. Binder, M.D., completed a Psychiatric Review Technique Form. (Tr. at 19, 177-90.) Dr. Binder opined that Claimant's depression and anxiety resulted in mild limitations in activities of daily living and in maintaining social functioning, concentration, persistence, or pace. (Tr. at 19, 187.) He determined that Claimant had no episodes of decompensation. (Id.) Dr. Binder further opined that Claimant was partially credible, but that she had "nonsevere functional limitations secondary to mental condition." (Tr. at 19, 189.) In forming his opinions, Dr. Binder considered Claimant's two hospitalizations in the 1990's, her outpatient treatment in 1995 for a period of three months, and Ms. Walker's and Mr. Adam's consultative evaluation. (Id.)

On April 7, 2005, Dr. Andres Rago examined Claimant at the request of the Commissioner. (Tr. at 194-200.) Dr. Rago noted that Claimant drove herself to the evaluation. (Tr. at 194.) Claimant reported that she had experienced anxiety problems since 2000, and that she usually developed hives when she was nervous. (Id.) She reported difficulty falling asleep and frequent awakenings, a good appetite, feelings of hopelessness and guilt, a loss of interest in all pleasurable activities, lack of motivation, chronic fatigue, poor concentration, feeling that she wanted to cry, auditory and visual hallucinations, and suicidal ideation but no plan. (Tr. at 194-95.) On examination, Dr. Rago noted that Claimant's intellectual functioning and mental state appeared normal. (Tr. at 197.) Nevertheless, he opined that her signs and symptoms were referable to a depressive disorder and anxiety disorder. (Tr. at 198.)

Claimant treated with Dr. Riaz U. Riaz, M.D., from April 15, 2005, through March 23, 2006. (Tr. at 21, 23, 246-59, 274-80, 281-82.) On April 15, 2005, Claimant reported that she was depressed,

nervous, and anxious; that she was irritable; that she upset, cried, and lost her temper easily; that she had anxiety attacks; and that she had issues from her childhood that needed to be addressed. (Tr. at 257.) Claimant further reported that she cooked; cleaned; shopped; read; watched television; drove a vehicle; visited friends, neighbors, and relatives; attended church; read and worked puzzles as hobbies; was able to shower, bathe, and dress herself; had a good appetite; slept five hours per night; and that she had nightmares. (Tr. at 258.) On mental status exam, Dr. Riaz observed that Claimant had no difficulty relating to him and that she exhibited a depressed and anxious mood, a constricted affect, and spontaneous speech. (Tr. at 21, 259.) Claimant presented with feelings of hopelessness, worthlessness, and uselessness; had suicidal thoughts off an on but noted that her religious beliefs kept her from attempting suicide; had no active suicidal plans or auditory or visual hallucinations. (Id.) Dr. Riaz diagnosed major depressive disorder, severe, recurrent episodes, and gave Claimant a global assessment of functioning of 60, which was indicative of moderate limitations. (Id.) Dr. Riaz opined that the combination of Claimant's emotional and physical problems rendered her incapable of gainful employment. (Id.) He further opined that Claimant was unable to interact appropriately with co-workers and supervisors, to perform routine repetitive tasks at a sustained level, and was not a candidate for vocational rehabilitation. (Id.)

The medical record also contains mostly illegible treatment notes from Dr. Riaz on April 12, 2005, April 26, 2005, May 19, 2005, July 18, 2005, October 10, 2005, and January 4, 2006. (Tr. at 21, 252-56.) On January 4, 2006, Dr. Riaz completed a Mental Impairment Questionnaire (RFC & Listing), stating that Claimant had major depressive disorder and a GAF of 60. (Tr. at 21, 246.) Dr. Riaz checked boxes indicating symptoms of generalized persistent anxiety, mood disturbance, and difficulty thinking or concentrating, and opined that her prognosis was poor. (Tr. at 21, 246-47.) Dr.

Riaz also indicated that Claimant was unable to meet competitive standards for the mental abilities and aptitudes needed to do unskilled work in all areas including: remembering, understanding, and carrying out very short and simple instructions; maintaining attention for two hour segments; maintaining regular attendance; sustaining an ordinary routine without special supervision; working in coordination with or proximity to others without being unduly distracted; making simple work-related decisions; completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; asking simple questions or requesting assistance; accepting instructions and responding appropriately to criticism from supervisors; getting along with co-workers or peers; responding appropriately to changes in a routine work setting; dealing with normal work stress; and being aware of normal hazards and taking appropriate precautions. (Tr. at 21, 247-48.) Dr. Riaz further opined that Claimant had limited but satisfactory ability to adhere to basic standards of neatness and cleanliness and to use public transportation. (Tr. at 21, 249.) However, he opined that she was unable to meet competitive standards in interacting appropriately with the general public, maintaining socially appropriate behavior, and traveling in unfamiliar places. (Id.) Dr. Riaz noted that he did not perform any psychological testing for IQ or reduced intellectual functioning. (Id.) Finally, Dr. Riaz opined that Claimant had moderate functional limitations in maintaining social functioning, concentration, persistence, or pace, and had one or two episodes of decompensation. (Tr. at 21, 250.) He noted that Claimant's impairments would cause her to be absent from work about three days per month. (Tr. at 21, 250-51.)

On March 23, 2006, Dr. Riaz completed another Questionnaire, which indicated some improvement in her conditions. (Tr. at 21, 275-80.) Dr. Riaz indicated that Claimant had limited but

satisfactory ability to understand, remember, and carry out very short and simple instructions; make simple work-related decisions; ask simple questions or request assistance; respond appropriately to changes in a routine work setting; and be aware of normal hazards and take appropriate precautions. (Tr. at 21, 276-77.) Regarding semiskilled and skilled work, Dr. Riaz indicated that Claimant had limited but satisfactory ability to set realistic goals or make plans independently of others. (Tr. at 278.) Finally, regarding particular jobs, Dr. Riaz indicated that Claimant had limited but satisfactory ability to maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, and use public transportation. (Id.)

On September 5, 2006, Teresa E. Jarrell, M.A., conducted a psychological evaluation of Claimant. (Tr. at 302-08.) Claimant reported that she had experienced symptoms of depression and anxiety since childhood. (Tr. at 303.) She reported her daily activities to include maintaining personal hygiene without assistance, cooking, driving, attending church on a regular basis, and visiting relatives and friends. (Id.) On mental status examination, Ms. Jarrell noted that she had no difficulty establishing or maintaining rapport with Claimant and that she was alert, attentive, and cooperative. (Tr. at 304.) Ms. Jarrell observed that Claimant's mood was mildly anxious and depressed, her affect was restricted, and her speech was spontaneous and normal in rate and volume. (Id.) Claimant was oriented in all spheres and exhibited normal immediate memory, judgment, and psychomotor behavior. (Id.) Her recent memory was severely deficient, and her remote memory, concentration, and abstract reasoning were mildly deficient. (Id.) Ms. Jarrell noted that Claimant was cooperative and motivated. (Id.) Ms. Jarrell diagnosed major depressive disorder, severe, without psychotic features and gave Claimant a GAF of 55. (Tr. at 306.) Due to Claimant's physical and emotional problems, Ms. Jarrell opined that Claimant was incapable of sustaining competitive employment. (Tr.

14

at 307.)

Claimant alleges that the ALJ failed to give proper credence to the functional limitations imposed by Claimant's mental impairments. (Document No. 13 at 4-8.) Specifically, Claimant notes that the ALJ failed to acknowledge Claimant's two hospitalizations in the 1990's, failed to mention Ms. Jarrell's report, and therefore, essentially placed no mental health limitations on Claimant in formulating Claimant's RFC. (Document No. 13 at 4-6.) Claimant further alleges that the ALJ erred in rejecting the opinions of Dr. Riaz. (Id. at 4-5.)

Claimant correctly points out that the ALJ did not acknowledge explicitly Claimant's two hospitalizations in 1990 and 1995 for suicidal ideation and depression, though he considered the various evaluations which referenced the hospitalizations. The Court notes that Claimant's latest hospitalization occurred approximately eight years prior to Claimant's alleged onset date, and that Claimant required no further hospitalizations or in-patient treatment. The various examining and consultative medical consultants acknowledged Claimant's hospitalizations, but failed to find any specific functional limitations resulting from such treatment that occurred in the distant past. Furthermore, notwithstanding Claimant's alleged inability to pay for medical treatment, there is nothing in the evidence that connects the two hospitalizations in the 1990's directly to Claimant's depression and anxiety impairments eight years later. It is significant to note that given the length of time since her hospitalizations, the medical providers were unable to provide copies of her medical records. Accordingly, the undersigned finds that any error that the ALJ may have committed in not acknowledging Claimant's hospitalizations in the 1990's is harmless.

Claimant further correctly points out that the ALJ did not mention Ms. Jarrell's psychological evaluation in his decision. However, as the Commissioner notes, Ms. Jarrell's opinion does not

support Claimant's claim of disability. Consequently, the Court finds that any error that the ALJ may have committed in not mentioning Ms. Jarrell's evaluation is harmless. As stated above, the only negative findings in Ms. Jarrell's report consisted of severely deficient recent memory, and only a mildly anxious and depressed mood, restricted affect, and mildly deficient remote memory, concentration, and abstract reasoning. (Tr. at 305-06.) Despite Ms. Jarrell's diagnosis of severe major depressive disorder, without psychotic features, she assessed a GAF of 55, which was indicative of only moderate symptoms and limitations.[3] Ms. Jarrell's findings of a severe impairment but only moderate limitations is inconsistent with her finding of disability. Accordingly, the Court finds persuasive the Commissioner's argument and finds that although the ALJ erred in not considering Ms. Jarrell's opinion, such error was harmless.

Finally, claimant alleges that the ALJ erred when he failed to call a vocational expert to testify regarding her ability to work, though such an expert was present at the hearing. (Document No. 13 at 7-8.) As discussed above, the ALJ determined at step four of the sequential analysis that Claimant was capable of performing her past relevant work as a waitress and a telephone solicitor. (Tr. at 23, Finding No. 6.) Through step four, Claimant retained the burden of producing evidence which demonstrated that she could not perform her past relevant work; the ALJ was not required to obtain the testimony from a vocational expert until he reached step five of the sequential analysis. Accordingly, the Court finds that the ALJ's decision to not obtain testimony from a vocational expert

---

[3] The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF of 51-60 indicates that the person has moderate symptoms, or moderate difficulty in social, occupational or school functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32 (4th ed. 1994).

at step four is supported by substantial evidence.

2. Treating Source Opinion.

Claimant further alleges that the ALJ improperly discounted the opinions of Dr. Riaz. (Document No. 13 at 4-5, 12-14.) Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2006). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of

specialty). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency psychological consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2004). The ALJ, however, is not bound by any findings made by state agency medical or psychological consultants and the ultimate determination of disability is reserved to the ALJ. Id. §§ 404.1527(f)(2)(I) and 416.927(f)(2)(I).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2006). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2004). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2006). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the

factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6).

The ALJ summarized and considered the January 4, 2006, and March 23, 2006, opinions of Dr. Riaz in his decision, but rejected them because he failed to define the competitive standards which he opined that Claimant failed to meet, failed to explain why Claimant was not a good candidate for vocational rehabilitation, and failed to assess a GAF consistent with such severe limitations. (Tr. at 21, 23.)

Claimant contends that the ALJ erred in discounting Dr. Riaz's opinion because he failed to define the phrase "competitive standards." (Document No. 13 at 12.) Claimant asserts that the form that Dr. Riaz completed clearly defined the phrase, and therefore, "it must be presumed that Dr. Riaz was aware of the definition." (Id.) Claimant correctly notes that the form Mental Impairment Questionnaires completed by Dr. Riaz on January 4, 2006, and March 23, 2006, clearly defined the phrase "unable to meet competitive standards" to mean that "your patient cannot satisfactorily perform this activity independently, appropriately, effectively, and on a sustained basis in a regular work setting." (Tr. at 247, 275.) Nevertheless, as the ALJ determined, it is not clear upon which information Dr. Riaz relied in assessing such stringent limitations. Dr. Riaz's treatment notes do not reflect such extreme limitations, and his opinions clearly are inconsistent with his assessed GAF of 60. Furthermore, as the ALJ noted, Dr. Riaz failed to explain why Claimant was not a good candidate for vocational rehabilitation. In considering the factors of 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2), the ALJ noted the length and nature of Dr. Riaz's treatment of Claimant. Accordingly, the Court finds that the ALJ's decision to not give controlling weight to the opinions of Dr. Riaz is supported by substantial evidence of record.

Claimant contends however, that in discrediting Dr. Riaz's opinions, the ALJ improperly

accorded greater weight to the opinion of the state agency medical consultant, Dr. James T. Binder,

M.D. (Document No. 13 at 13.) Claimant asserts that Dr. Binder was a non-examining, non-treating

source, who did not benefit from the entire record when formulating his opinion. (<u>Id.</u>) As discussed

above, the evidence demonstrates that Dr. Binder assessed only mild limitations of activities of daily

living, social functioning, concentration, persistence, and pace, and no episodes of decompensation.

(Tr. at 187.) In reaching his opinions, Dr. Binder considered Claimant's hospitalizations in 1990 and

1995, the absence of current treatment or medications, and the consultative examination of Mr.

Adams and Ms. Walker. (Tr. at 189.) The ALJ gave great weight to Dr. Binder's opinion because it

was consistent with the evidence of record. (Tr. at 23.) As discussed above, the evidence supports Dr.

Binder's opinion, despite him not having considered the subsequent treatment notes. Accordingly,

the Court finds that the ALJ's decision to accord greater weight to the opinion of the state agency

medical consultant than to Claimant's treating physician, Dr. Riaz, is supported by substantial

evidence. <u>See</u> <u>Smith v. Schweiker</u>, 795 F.2d 343, 356 (4th Cir. 1986) (stating that "the testimony of

a non-examining physician can be relied upon when it is consistent with the record" and that "if the

medical expert testimony from examining or treating physicians goes both ways, a determination

coming down on the side of the non-examining, non-treating physician should stand."); <u>see also</u>, 20

C.F.R. § 404.1527(f)(2) and SSR 96-5p; SSR 96-6p.

2. <u>Credibility Assessment</u>.

     Finally, Claimant alleges that the ALJ erred in assessing her credibility. (Document No. 13

at 8-11.) The Commissioner asserts that Claimant's argument is without merit and that substantial

evidence supports the ALJ's decision. (Document No. 16 at 14-16.)

     A two-step process is used to determine whether a claimant is disabled by pain or other

20

symptoms. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain or symptoms alleged. 20 C.F.R. §§ 404.1529(b) and 416.929(b) (2006); SSR 96-7p; See also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). If such an impairment is established, then the intensity and persistence of the pain or symptoms and the extent to which they affect a claimant's ability to work must be evaluated. Id. at 595. When a claimant proves the existence of a medical condition that could cause the alleged pain or symptoms, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2006). Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:
>
> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

21

(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2006).

SSR 96-7p repeats the two-step regulatory provisions:

First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a

22

claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms and credibility. (Tr. at 21-22.) The ALJ found, at the first step of the analysis, that Claimant's "medically determinable impairments could reasonably be expected to produce the alleged symptoms." (Tr. at 23.) Thus, the ALJ made an adequate threshold finding and proceeded to consider the intensity and persistence of Claimant's alleged symptoms and the extent to which they affected Claimant's ability to work. (Tr. at 21-22.) At the second step of the analysis,

the ALJ concluded that Claimant's "statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible." (Tr. at 23.)

The ALJ summarized Claimant's testimony in his decision, noting that Claimant stated that she suffered anxiety that impaired her concentration, and back pain. (Tr. at 22.) The ALJ thus noted the nature and location of Claimant's pain and other symptoms, and further noted the testimony that she could walk for one half a mile, stand for one hour, and sit for one to two hours at a time. (Tr. at 22.) The ALJ noted that Claimant underwent cataract surgery on her left eye, that she had normal vision in her right eye, and that she was advised to use reading glasses. (Tr. at 20, 22.) The ALJ further noted that Claimant's diabetes was treated with medications, as was her depression. (Tr. at 20.)

The ALJ also summarized Claimant's reported activities of daily living. (Tr. at 21.) Claimant testified that she watched television for twelve to fourteen hours per day, cooked, drove, attended church three times a week, read, shopped, independently managed her personal care, and performed household chores such as sweeping, vacuuming, and washing clothes. (Tr. at 22.) The ALJ further noted Claimant's reports to Mr. Adams and Ms. Walker that she spent most of her days indoors, watched television, and performed some household chores. (Tr. at 21.)

The ALJ determined that at the hearing, Claimant "made vague, often contradictory statements, and was frequently non responsive to questions. The objective medical evidence does not indicate mental or physical impairments that would preclude the performance of a limited range of light work." (Tr. at 23.) As the Commissioner notes, Claimant's reported symptoms varied from those presented to Mr. Adams and Ms. Walker to Dr. Riaz, within a relatively short period of time. Though the ALJ specifically did not identify the inconsistent statements, the evidence of record and the ALJ's

24

summary of the evidence, as stated above, supports the ALJ's conclusion. In finding Claimant not completely credible, the ALJ properly considered the factors set forth in the Regulations. Accordingly, the Court finds that the ALJ's credibility determination is supported by substantial evidence.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings (Document No. 12.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Document No. 16.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: September 30, 2008.

R. Clarke VanDervort
United States Magistrate Judge

25